## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**WYNAKY JACKSON,**

                     **Plaintiff,**          **:**

     **v.**                                 **Case No. 2:19-cv-5324**
                                           **Judge Sarah D. Morrison**
                                         **Magistrate Judge Chelsey M.**
**AETNA LIFE INSURANCE**               **Vascura**
**COMPANY, *et al.*,**              **:**

                     **Defendants.**

## OPINION AND ORDER

Plaintiff Wynaky Jackson brings this action under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA") [29 U.S.C. § 1132] following Defendant Aetna Life Insurance Company's ("ALIC") denial of benefits. (*See* Compl., ECF No. 1.) ALIC filed the Administrative Record under seal.[1] (*See* ECF No. 12.) Thereafter, both parties moved for judgment on the Administrative Record. (ECF Nos. 15, 16.) Ms. Jackson and ALIC have each responded to the other's motion. (ECF Nos. 17, 18.) This matter is now ripe for consideration. For the reasons set forth below, ALIC's Motion for Judgment on the Administrative Record (ECF No. 15) is **GRANTED** and Ms. Jackson's Motion for Judgment on the Administrative Record (ECF No. 16) is **DENIED**.

---

[1] The Administrative Record is contained in ECF Nos. 12-1–12-5.

## I.    BACKGROUND

Ms. Jackson began working for Boehringer Ingelheim Corporation as a

Logistics Technician in 1998. (*See* Admin. R., PAGEID # 126.) Her job duties

included:

> accurately pick, pack, stage, scale, and load customer orders for
> external/internal movement and prepare all pertinent documentation;
> monitor and maintain adequate supply of operating supplies; provide
> clean up and light maintenance duties; actively receive and put away
> incoming products and supplies; load and unload trucks and provide
> accurate documentation; store, receive, and transact material moves;
> select and print deliveries and report any material issues; check
> accuracy of documents to ensure proper movement of inventory; conduct
> inventory counts; contact carriers and coordinate pickups and deliveries,
> prepare pertinent documentation for exports, process orders, and
> shipping memos; and operate a hand scanner and fork truck.

(*Id.*, PAGEID # 1365. *See also id.*, PAGEID # 1880–93.) The Logistics Technician

position required Ms. Jackson to perform medium strength-level work, including

frequently lifting up to 35 pounds, occasionally lifting up to 50 pounds, and sitting,

standing, and walking for up to six hours each workday. (*Id.*, PAGEID # 1889–90.)

Ms. Jackson held the position for 17 years, but pain in her left heel and ankle

required Ms. Jackson to take leave in October 2015. (*See id.*, PAGEID # 126.)

Upon taking leave and through August 2018, Ms. Jackson continued to

experience pain, hypersensitivity to touch, and functional limitations in her left

ankle and foot. Despite two surgeries, clinical findings showed recurrence of bone,

joint, tendon, and nerve abnormalities. Ms. Jackson failed a course of specialized

physical therapy and relied on assistive devices for ambulation and pain

management. Throughout that time, Ms. Jackson received benefits from Boehringer

Ingelheim-sponsored disability plans. After those benefits were discontinued, Ms.

2

Jackson filed her Complaint against ALIC and the Boehringer Ingelheim Corporation Long Term Disability Plan (the "Plan").[2] (Compl.) Ms. Jackson alleges that the Plan's claims administrator and underwriter, ALIC, wrongly denied her benefits to which she is entitled under the Plan. (*See, id.*)

### A. Relevant Plan/Policy Provisions

The Administrative Record includes Plan Documents, including the Plan's Certificate-Booklet, Policy, and Schedule of Benefits. (*See* Admin. R.) Provisions relevant to the case now before the Court are summarized or excerpted below.

Boehringer Ingelheim Corporation established and maintains the Plan, for the benefit of its eligible employees, to provide income replacement for non-occupational illness and injury that prevents participants from working. (*See id.*, PAGEID # 50, 51, 54.)  The Plan is an employee welfare benefit plan subject to ERISA. (*See id.*, PAGEID # 75–76. *See also* ERISA § 3(1) [29 U.S.C. § 1102(1)].) The Plan is fully-insured—in other words, benefits are paid out through an insurance policy underwritten by ALIC. (*Id.*) The Plan Documents provide the following details pertaining to the Plan's application and administration:

> **When Benefits Are Payable**
> Once you meet the LTD **test of disability**, your long term disability benefits will be payable after the Elimination Period, if any, is over. No benefit is payable for or during the Elimination Period. The Elimination Period is the amount of time you must be disabled before benefits start. . . .

---

[2] By stipulation of the parties, the Plan was dismissed from this action on January 29, 2020. (ECF No. 5.) Accordingly, ALIC is the only remaining Defendant.

Your Long Term Disability benefits will be payable for as long as your period of disability benefit eligibility continues but not beyond the end of the Maximum Monthly Benefit Period. . . .

(*Id.*, PAGEID # 54 (all emphasis in original).)

**Test of Disability []**
From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:

- You cannot perform the **material duties** of your **own occupation** solely because of an **illness**, **injury** or disabling pregnancy-related condition; and
- Your earnings are 80% or less of your **adjusted predisability earnings**.

***After the first 24 months of your disability*** that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any **reasonable occupation** solely because of an **illness**, **injury** or disabling pregnancy-related condition.

(*Id.*, PAGEID # 55 (all emphasis in original).)

**When Long Term Disability Benefit Eligibility Ends []**
You will no longer be considered as disabled nor eligible for long term monthly benefits when the first of the following occurs:

- The date you no longer meet the LTD test of disability, as determined by [ALIC]. . . .

(*Id.*, PAGEID # 56.)

**Own Occupation**
The occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed:

- For your specific employer; or
- At your location or work site; and
- Without regard to your specific reporting relationship.

(*Id.*, PAGEID # 71.)

4

**Reasonable Occupation**
This is any gainful activity:

- For which you are, or may reasonably become, fitted by education, training, or experience; and
- Which results in, or can be expected to result in, an income of more than 80% of your **adjusted predisability earnings**.

(*Id.*, PAGEID # 72 (all emphasis in original).)

> **Claim Determinations; ERISA Claim Fiduciary.** For the purpose of [ERISA § 503 (29 U.S.C. § 1153)], We [(ALIC)] are a fiduciary with complete authority to review all denied claims for benefits under this Policy. . . . In exercising such fiduciary responsibility, We shall have discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated herein. We shall be deemed to have properly exercised such authority unless We abuse our discretion by acting arbitrarily and capriciously. We have the right to adopt reasonable policies, procedures, rules, and interpretations of this Policy to promote orderly and efficient administration.

(*Id.*, PAGEID # 93 (all emphasis in original).)

## B.    Administrative Claim

Ms. Jackson's claim for Plan benefits was first approved as of April 23, 2016. (*Id.*, PAGEID # 121–22.) In other words, ALIC determined that Ms. Jackson could not perform the duties of a Logistics Technician. Ms. Jackson was approved for Social Security disability benefits as of November 24, 2016. (*Id.*, PAGEID # 1090–93.) In August of 2017, ALIC notified Ms. Jackson that the test of disability applicable to her claim would change, and, as of April 22, 2018, she would be required to show that she could not perform the duties of "any reasonable occupation." (*Id.*, PAGEID # 162.) On March 8, 2018, ALIC sent a letter to Ms. Jackson, advising that her claim had been approved to continue beyond the 24-

month mark "as long as [she] continue[d] to meet the Plan definition" of disability. (*Id.*, PAGEID # 171.) The letter also advised that ALIC would "continue to monitor [her] disability status by periodically requesting updated medical and/or other documentation to verify . . . continued eligibility for Long-Term Disability benefits." (*Id.*)

Ms. Jackson's claim file, including medical records and Attending Provider Statements (each an "APS"), was referred to ALIC's clinical consultant Dr. Louise Babineau for review in late-Summer 2018. (*See id.*, PAGEID # 396.) Dr. Babineau concluded:

> There is medical evidence to support restrictions and limitations of full time seated capacity, use of assistive device and occasional lift up to 10 [pounds]. Claimant has history of surgery 1/2016 retrocalcaneal spur excision and Achilles tendon repair left foot. She had second surgery 2/23/17 of left Achilles debridement/excision and left ankle [flexor hallucis longus] tendon transfer. She has symptoms of left ankle pain and swelling with examination documenting left ankle limited range of motion, tenderness along peroneal tendons with examination documenting left ankle limited range of motion, tenderness along peroneal tendons with diffuse tenderness left leg. She has improved function and less pain with the use of an ankle brace. . . . I would consider her to be at maximum medical improvement, her condition being chronic with no significant improvement in capacity anticipated.

(*Id.*, PAGEID # 399.) Adopting Dr. Babineau's conclusion, ALIC ordered a transferable skills and labor market analysis on Ms. Jackson's claim from its vendor, Coventry. (*Id.*, PAGEID # 172–74.) Coventry returned its analysis on August 13, 2018. (*Id.*, PAGEID # 1364–72.) The analysis concluded that Ms. Jackson could perform the duties of a procurement clerk, credit checker, or dispatcher, each of which was available in the central Ohio job market and would yield a wage of at least $16.29 per hour (80% of Ms. Jackson's adjusted predisability

earnings). (*Id.*) Coventry's report detailed the parameters used to run the analysis

for Ms. Jackson's claim:

> A [transferable skills analysis] using Oasys software was generated to identify suitable matches with a wage of $16.29 per hour and [specific vocational preparation ("SVP") level] of 1-5 based on Ms. Jackson's work history. Parameters were set for full-time sedentary physical demand level work with consideration given to seated work with occasional lifting up to 10 pounds and use of an ankle brace. . . . The sedentary occupations are expected to allow a seated posture at an ergonomically correct workstation with the ability for sit/stand as needed. The work tasks vary with each occupation, requiring occasional change of position, which is expected to involve at least 5 minutes of positional change per hour.

(*Id.*, PAGEID # 1367.) For each of the three proposed occupations, Coventry made

the following specific finding:

> A review of the job description, substantial job duties, and materials associated with the selected occupation indicates that it is reasonable to expect duties can be performed at an ergonomically correct workstation within Ms. Jackson's functional abilities of seated work, no lifting over 10 pounds, with the use of an ankle brace.

(*Id.*, PAGEID # 1367–68.)

On August 14, 2018, ALIC sent a letter to Ms. Jackson advising that her

benefits were being discontinued. (*Id.*, PAGEID # 175–77.) The letter explained:

> We approved your claim in March 2018 as we felt you met the second definition of disability as being disabled from performing the material duties of any reasonable occupation for which you may be suited by education, training and/or experience within a reasonable wage. Recently, we reviewed your claim to determine your continued eligibility for LTD benefits beyond the initial 24 Months period. Based upon our review, we have determined that you no longer meet the disability definition under the Policy that requires you to be disabled from "any occupation."
>
> . . .

7

> At this time, it appears you have limitations that would preclude you from returning to work at your prior occupation. Based on the medical evidence available to us, there is no medical evidence that would prevent you from working within the restrictions of able to sit with ability to change positions as needed for comfort for 8 hours per day/5 days per week, use of assistive device and occasional lifting up to 10 pounds. There is no documentation or observation of sitting intolerance.
>
> . . .
>
> In view of the above, [ALIC] is terminating your claim for disability benefits effective 8/15/2018, on the basis that you are not totally disabled from performing any reasonable occupation for which you are qualified for by education, training or experience. . . .

(*Id.*) The letter also listed the three occupations identified in Coventry's analysis, including their title, SVP (in each case, "Sedentary"), and mean wage. (*Id.*)

"Sedentary Occupation" was defined in the letter to include:

> Exerting up to 10 pounds of force occasionally, and/or a negligible amount of force, frequently to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

(*Id.*)

ALIC's claim notes reflect that Ms. Jackson called to discuss the letter. (*See id.*, PAGEID # 467.) A summary of that call reflects that ALIC told Ms. Jackson that the file supported an ability to sit, and change positions as needed. (*Id.*) Ms. Jackson disagreed, indicating that she was preparing for a third surgery. (*Id.*) ALIC's representative advised Ms. Jackson that she could send "updated medical," which would be taken "to a roundtable with doctor [sic] and review[ed] for possible reinstatement" of benefits. (*Id.*)

Ms. Jackson enlisted the help of her treating podiatrist, Dr. Bradley Mehl, to provide updated medical records. However, ALIC found that those records "were not enough to change [their] decision." (*Id.*, PAGEID # 179.) Specifically, because the APS provided in the supplement

> lists restrictions to using the brace/boot on your left leg when you are standing or walking. There are no limitations listed in the [APS] or the medical records that would prevent you from doing work primarily from a seated position, as we outlined in our letter dated 8/14/2018. There are no restrictions noted in the records that would prevent you from sitting or using your arms and hands.

(*Id.*)

Ms. Jackson then filed a formal appeal. (*See id.*, PAGEID # 181.) As part of the review process, ALIC engaged Reliable Review Services to review the claim file and a peer-to-peer consult between one of their physician reviewers and Ms. Jackson's providers. (*See id.*, PAGEID # 441.) Dr. Dawn Masternick delivered her report on February 18, 2019. (*Id.*, PAGEID # 952–66.) Dr. Masternick reviewed Ms. Jackson's claim file, including medical treatment notes, and had a telephone conversation with Dr. Mehl. (*Id.*) Dr. Masternick summarized their conversation as follows:

> Discussion occurred with Dr. Mehl on 02/13/2019. He relates that he is treating the claimant for Achilles tendonitis, peroneal tendonitis, and nerve entrapment. He relates that he is also treating her for a concomitant hallux limitus, but this is not what is causing the disability. Dr. Mehl states that the claimant has a major muscle imbalance causing functional impairment. She also has nerve entrapment and chronic pain. He relates that the claimant is able to weight bear to tolerance, which is poor and very limited due to pain. He states that she has significant rearfoot limitations due to guarding from pain and the muscle imbalance. He states that she wears a brace or the CAM boot to help prevent rearfoot motion and limit pain, which helps minimally. Dr. Mehl states that the claimant has pain after a very short period of time

on her foot. He states that the claimant can drive an automatic, he has not restricted her driving. Dr. Mehl relates that there is not any way that the claimant could operate a manual vehicle due to the muscle imbalance and pain in her left foot. Dr. Mehl states that the claimant has been taking Duexis. Otherwise, she is not currently on any other medications.

(*Id.*, PAGEID # 962–63.) Based on her conversation with Dr. Mehl and her review of the written record, Dr. Masternick concluded that Ms. Jackson suffered the following functional limitations:

The disabling diagnoses are: Achilles tendonitis left, peroneal tendonitis left, pain in the left foot, neuritis/sural nerve entrapment. The claimant would have the following restrictions from 08/15/2018 to the present:

Walking and standing: infrequent (1% to 6% of the time).
No standing on the left foot.
Must use a boot or brace when weight bearing and may use an assistive device.
No stooping, squatting, pushing or climbing of ladders or stairs.

(*Id.*, PAGEID # 963–64.)

On February 21, 2019, ALIC sent Dr. Masternick's report for an internal "Vocational Rehab Review." (*See id.*, PAGEID # 446–47, 451.) John Hall, Senior Vocational Rehabilitation Consultant (*see id.*, PAGEID # 1450), submitted the following:

Per check of OASYS system, these occupations involve sitting and/or lift/carry up to 10lbs occasionally. They do not involve walking, climbing of stairs/ladder, stooping, squatting, or pushing. Also, a person performing these identified occupations should be able to wear a brace, as these are classified as sedentary occupations. Consequently the previously identified occupations [(procurement clerk, credit checker, and dispatcher)] would appear to coincide with the updated restrictions and limitations.

(*Id.*, PAGEID # 448.)

On February 28, 2019, ALIC issued its determination on appeal. (*Id.*, PAGEID # 190–92.) Based on the conclusions of Dr. Masternick and Mr. Hall, ALIC upheld is August 2018 decision terminating benefits under the Plan. (*Id.*)

## C.    Attending Provider Statements

Throughout Ms. Jackson's disability claim and appeal, ALIC received several APSes from her treating physicians. The APSes appropriately reflect and summarize the voluminous medical record.

On November 5, 2015, Dr. Robert Mendicino—who performed Ms. Jackson's January 2016 ankle surgery—completed an APS indicating that she was "non-weight bearing" and required the use of a controlled ankle movement ("CAM") walker. (*Id.*, PAGEID # 1824.) The following month, Dr. Mendicino completed two additional APSes. The first, dated February 4, 2016, indicated that Ms. Jackson was limited to "No bearing weight on [left] foot. No walking, standing." (*Id.*, PAGEID # 1776.) She could, however, perform "sitting, working at a desk-seating." (*Id.*) The second, dated February 11, 2016, reiterated that Ms. Jackson was non-weight bearing. (*Id.*, PAGEID # 1827.) In a March 24, 2016 APS, Dr. Mendicino indicated that Ms. Jackson "cannot push, carry heavy weights" but that she could "drive, or sedentary for 8 hrs." (*Id.*, PAGEID # 1917.)

Ms. Jackson's primary care provider, Dr. Howard Bellin, stated on an April 22, 2016 APS that Ms. Jackson could not "walk or sit for prolonged periods–pain." (*Id.*, PAGEID # 754–55.) Rheumatologist Dr. Heather Lake indicated on an APS completed the following month that Ms. Jackson was unable to "stand/walk." (*Id.*, PAGEID # 858.) Orthopedic surgeon Dr. Nicholas Cheney completed an APS on

July 1, 2016, wherein he advised that Ms. Jackson had "limited weight bearing left foot/ankle." Finally, podiatrist Dr. Ralph Napolitano stated on an August 24, 2016 APS that Ms. Jackson suffered from "severe leg [and] foot pain" and was unable to ambulate, though she could perform "any seated work activity." (*Id.*, PAGEID # 651.)

Dr. Mehl submitted three additional APSes to ALIC. The first, dated June 14, 2017, indicated that Ms. Jackson was capable of continuous (67–100% of the time) sitting and occasional (1–33% of the time) standing/walking. (*Id.*, PAGEID # 1116.) On October 30, 2018, Dr. Mehl indicated that Ms. Jackson was restricted to "no standing left foot, wear boot/brace at left [lower extremity] for walking" but that she could "ambulate [with] boot/brace on left [lower extremity.]" (*Id.*, PAGEID # 991.) Dr. Mehl repeated that opinion verbatim on a February 28, 2018 APS. (*Id.*, PAGEID # 1062.)

## II.    STANDARD OF REVIEW

In a challenge to denial of benefits under ERISA § 502, the plaintiff must prove, by a preponderance of evidence, that she is entitled to receive the benefit. *Javery v. Lucent Tech., Inc. Long Term Disability Plan*, 741 F.3d 686, 700–701 (6th Cir. 2014 (citing *Tracy v. Pharmacia & Upjohn Absence Payment Plan*, 195 F. App'x 511, 516 n. 4 (6th Cir. 2006)). The challenge is reviewed by the courts under a *de novo* standard—*unless* the plan expressly grants its administrator or fiduciary discretionary authority "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). *See also Yaeger v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) (quoting

*Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990)). If a plan does grant discretionary authority, "application of the highly deferential arbitrary and capricious standard of review is appropriate[.]" *Yaeger*, 88 F.3d at 380. The parties here agree that the arbitrary and capricious standard applies.

"A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from 'a deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Judicial review is no "rubber stamp"—rather the court examines the "quantity and quality of the medical evidence on each side." *Id.*, (citing *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). "[T]hough the [arbitrary and capricious] standard is not without some teeth, it is not all teeth." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1049, 1064 (6th Cir. 2014). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). "When reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made." *McClain*, 740 F.3d at 1064 (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998)).

### III. ANALYSIS

#### A. ALIC's Motion for Judgment on the Administrative Record

In its Motion for Judgment on the Administrative Record, ALIC argues that its decision to deny Ms. Jackson's claim for benefits after the first 24 months was not arbitrary or capricious, because the evidence shows that she failed to satisfy the Plan's test of disability after that time. (*See, generally*, ECF No. 15.) The Plan provides that, after the initial 24 months of receiving benefits, a participant will only be entitled to further benefits if she is unable to work at any reasonable occupation—in other words, "any gainful activity for which you [the participant] are, or may reasonably become, fitted by education, training or experience; and which results in, or can be expected to result in, an income of more than 80% of your adjusted predisability earnings." ALIC's position is the opinions of medical reviewers, the medical records in the claim file, and the vocational analyses support the conclusion that Ms. Jackson was capable of working at a reasonable occupation, within a limited range of sedentary work. The Court agrees.

Substantial evidence supports ALIC's decision denying benefits. Nearly every APS submitted over the course of years indicates that Ms. Jackson was capable of performing seated work with use of an assistive device, such as a brace or boot. The reports of Dr. Babineau and Coventry, and later Dr. Masternick and Mr. Hall, also concluded that Ms. Jackson could perform seated work. Ms. Jackson points to two pieces of evidence indicating otherwise: Dr. Bellin's 2016 APS in which he opined that Ms. Jackson could not sit for prolonged periods due to pain; and Ms. Jackson's own representations to ALIC about experiencing discomfort when seated. Pointing

14

to evidence supporting an opposite conclusion does not, however, establish that ALIC's decision to terminate benefits is unsupported by substantial evidence. *Cf. Fenwick v. Hartford Life & Accident Ins. Co.*, __ F. App'x __, 2021 WL 100549, at *8 (6th Cir. 2021) ("[U]nder the substantial evidence standard, we ask only whether [the administrator's] decision was within the realm of reasonability; if it was, we 'defer[] to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal quotation marks omitted)).

Ms. Jackson next argues that the evidence does not establish that she could perform the full range of sedentary work. She looks to the definition of "sedentary work" used in ALIC's benefit determination letters:

> involves exerting up to 10 lbs. of force occasionally or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking and/or standing for brief periods of time. Jobs may be defined as Sedentary when walking and standing are required only occasionally and all other sedentary criteria are met.

(*See, e.g.*, Admin. R., at PAGEID # 191.) "Occasionally" is defined as 1–33% of the time. However, Dr. Masternick opined that Ms. Jackson could walk or stand only infrequently, or 1–6% of the time. Ms. Jackson effectively argues that Dr. Masternick's opinion that she could not perform the full range of sedentary work equates to an opinion that she could not work at all. In Ms. Jackson's view, "all sedentary occupations contemplate standing and walking, even if the occupational title description does not say so." (ECF No. 18, 6.) This position is at odds with the definition of sedentary work. The definition does not say that all sedentary jobs

15

must involve walking or standing; rather, it says that sedentary work *may* involve walking or standing. *Cf.* S.S.R. 96-9p, 1996 WL 374185, at *1 (acknowledging that, in the Social Security context, "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled'").

Ms. Jackson cites two cases in support of her interpretation.[3] Neither helps. The court in *Watson v. Western & Southern Fin. Group. Flexible Benefits Plan*, indeed stated that "[a] 'sedentary job' . . . is one that involves 'sitting' and 'walking and standing are required occasionally.'" 406 F. Supp. 3d 600, 611 (E.D. Ky. 2019) (quoting 20 C.F.R. § 404.1567(a)). However, its analysis pertained to an individual whose claim for disability benefits was under an "own occupation" standard, whose job description included capacity to "walk to meetings," and who could not walk (due to severe osteoarthritis of the knees), operate a manual wheelchair (due to issues in her shoulder), or use a motorized wheelchair (due to her weight). *Id.* at 611–12. Further, the quoted regulation itself states that "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is *often* necessary in carrying out duties." 20 C.F.R. § 1567(a) (emphasis added). Ms. Jackson next cites *Calhoun v. Life Ins. Co. of N. Am.*, 665 F. App'x 485 (6th Cir. 2016). The *Calhoun* court struck down the defendant's reliance on a physical ability

---

[3] Ms. Jackson also offers an "illustrative exercise," detailing the extent to which a Judicial Officer (a sedentary strength job) purportedly must walk. Though intended to show that walking is necessary to perform sedentary jobs, the exercise misses the mark. It fails to account for commonplace accommodations for our differently abled colleagues, and implies an artificial ceiling on their career progression in the justice system.

16

assessment indicating that the plaintiff could sit for a cumulative total of 66% of the workday (and could, therefore, work full-time) as a basis for denying disability benefits, in part because medical records showed that the plaintiff could not tolerate sustained sitting *or* standing. *Id*. at 495–96. In this case, there is virtually no medical evidence that Ms. Jackson could not tolerate sustained sitting.

Finally, Ms. Jackson argues that ALIC failed to provide a well-reasoned explanation of why its determination conflicts with that of the Social Security Administration ("SSA"). The Court disagrees. A plan administrator's failure to explain the reasons behind a decision inconsistent with the SSA's may weigh in favor of a finding that the administrator's decision was arbitrary or capricious. *See Calhoun*, 665 F. App'x at 492 (internal citation omitted). *See also DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 446 (6th Cir. 2009) (noting that "there is no technical requirement to explicitly distinguish a favorable Social Security determination in every [ERISA] case"). However, ALIC's February 27, 2019 letter, notifying Ms. Jackson that her appeal was denied, included the following:

> We understand that you were approved for Social Security Disability Income (SSDI) benefits in May 2017. The reviews completed by the Social Security Administration (SSA) and by your group coverage are done independently of each other, and are not always the same. The difference between our determination and the SSDI determination may be driven by the SSA regulations. For example, SSA regulations require that certain disease/diagnoses or certain education or age levels be given heavier or even controlling weight in determining whether an individual is entitled to SSDI benefits. Our review finds that we agree with the SSA that you were unable to work in your own (original) occupation in 2017. However, more recent examination findings from your attending physician have failed to reveal abnormal examination findings that would prevent you from working in any reasonable occupation as defined by the group coverage. In addition, a vocational assessment has

17

> identified three occupations available to you in your local labor market
> that fit within the definition of any reasonable occupation. Therefore,
> even though you are receiving SSDI benefits, we are unable to give it
> significant weight in our determination . . .

(Admin. R., PAGEID # 190–92.) The Court finds no error in ALIC's explanation.

ALIC explained that SSDI determinations are made independently and under

different criteria than Plan benefit determinations. *Cf. Black & Decker Disability*

*Plan v. Nord*, 538 U.S. 822, 832–34 (2003) (summarizing the "critical differences

between the Social Security disability program and ERISA benefit plans"). ALIC

further confirmed that it reviewed Ms. Jackson's recent reliable medical evidence to

determine whether she satisfied the Plan test of disability and found that she did

not. Nothing more is required.

In light of the above, ALIC's Motion for Judgment on the Administrative

Record is **GRANTED**.

### B.    Ms. Jackson's Motion for Judgment on the Administrative Record

Ms. Jackson's Motion for Judgment on the Administrative Record sets out

four arguments supporting her position that ALIC's denial of benefits was arbitrary

and capricious. Specifically, that: (i) the evidence does not support a conclusion that

she had full capacity for sedentary work; (ii) ALIC violated its duty to investigate

conclusions supplied by vendors before adopting those conclusions as a basis to deny

the claim; (iii) ALIC failed to provide full information to its vendors; and (iv) ALIC

relied on a flawed vocational report. Each argument is unavailing.

Ms. Jackson's first argument—that the evidence does not support a finding that she has full sedentary capacity for work—is addressed above. That discussion will not be repeated here.

Ms. Jackson next argues that ALIC violated its fiduciary duties by failing to investigate how Dr. Masternick's conclusion might have changed Coventry's assessment.[4] However, the Administrative Record shows that ALIC did investigate how Dr. Masternick's conclusion impacts the range of jobs that Ms. Jackson might be able to perform. The claim was referred to ALIC's internal vocational specialist, John Hall, who concluded that the occupational titles in Coventry's initial report remained viable options for Ms. Jackson. It is true, "a plan administrator must make some inquiry into whether the jobs selected are ones that the claimant can reasonably perform in light of specific disabilities." *Brooking v. Hartford Life and Accident Ins. Co.*, 167 F. App'x 544, 549 (6th Cir. 2006). But, nothing in the law requires ALIC to direct that inquiry to a specific vocational expert. ALIC satisfied its obligation to investigate in this case.

Third, Ms. Jackson argues that her claim did not receive a full and fair review because neither Coventry nor Dr. Masternick were notified that Ms. Jackson had been awarded SSDI, and Dr. Masternick did not receive Coventry's report. Ms. Jackson hypothesizes that Dr. Masternick's conclusion would have been different had she known about the SSDI award, and that she could have disagreed with

---

[4] In her response to ALIC's Motion, Ms. Jackson similarly argues that ALIC acted arbitrarily by sending Dr. Masternick's report to Mr. Hall, instead of sending it back to Coventry. For the reasons set out here, this argument also fails.

Coventry's conclusion had she seen the report. First, as ALIC points out, Dr. Masternick indeed considered the SSDI award. (Admin. R. at PAGEID # 972.) Beyond that, Ms. Jackson does not establish why the SSDI award was relevant to or could have changed the outcome of Coventry's analysis. (As detailed above, the definition of disability under the Social Security Act is different from the Plan test of disability.) Nor does she establish why Coventry's analysis was relevant to or could have changed the outcome of Dr. Masternick's review. (Dr. Masternick is not a vocational specialist.)  The argument is simply unpersuasive.

Finally, Ms. Jackson argues that ALIC arbitrarily relied on a flawed vocational report. In particular, she takes issues with the fact that two of the occupations on Coventry's reports are semi-skilled, where the Logistics Technician is unskilled. Ms. Jackson bears the burden of proving that she is entitled to benefits under the Plan. But she fails to offer any explanation as to why she could not "reasonably become[] fitted by education, training, or experience" to perform those occupations

Accordingly, Ms. Jackson's Motion for Judgment on the Administrative Record is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, ALIC's Motion for Judgment on the

Pleadings (ECF No. 15) is **GRANTED**. Accordingly, Ms. Jackson's Motion (ECF No.

16) is **DENIED**.


**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**